UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARANVIR THIARA,<br><br>    Petitioner,<br><br>  v.<br><br>CHRISTOPHER CHESTNUT, Warden of the Detention Facility, et al.,<br><br>    Respondents. | Case No.  1:26-cv-02272-KES-HBK (HC)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS IN PART[1]<br><br>(Doc. 1)<br><br>FIVE-DAY OBJECTION PERIOD |

Petitioner Karanvir Thiara, an immigrant detainee in U.S. Immigration Customs and Enforcement ("ICE") custody at the California City Immigration Processing Center in California City, California, initiated this action by filing a pro se petition for writ of habeas corpus under 28 U.S.C. § 2241 on March 23, 2026.  (Doc. 1, "Petition").  He raises a single ground for relief: his detention without a bond hearing violates his procedural due process rights under the Fifth Amendment.  (*Id*. at 16-17).

Respondents filed a response that acknowledging that courts in this district have rejected the government's position that noncitizens who unlawfully enter the country are subject to

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2025).

mandatory detention under 8 U.S.C. § 1225(b), and argue that if this Court agrees, it should deny release and instead order a bond hearing. (Doc. 12 at 2-5). Petitioner did not file a reply and the time to do so has passed. (*See* docket).

Petitioner is an Indian citizen who entered without inspection, was placed in removal proceedings under 8 U.S.C. § 1229a, and was later released on a 8 U.S.C. § 1226 bond in the amount of $25,000. For the reasons below, the undersigned recommends the district court grant the Petition in part.

## I.    BACKGROUND

Petitioner is a native and citizen of India who entered the United States without inspection on or about December 11, 2022. (Doc. 12-1 at 31). On October 17, 2023, Border Patrol agents arrested Petitioner, and on the same date U.S. Citizenship and Immigration Services ("USCIS") issued a Notice to Appear charging him as removable under 8 U.S.C. § 1182(a)(6)(A)(i) (alien entry without inspection). (*Id*. at 30, 34).

On December 8, 2023, Petitioner filed an asylum application; after being granted five continuances, that application remains pending. (*Id*. at 38-52; Doc. 12-2). On April 16, 2024, an Immigration Judge ("IJ") granted Petitioner's request for a change in custody status under 8 C.F.R. § 1236 and ordered his release on a $25,000 bond. (*Id*. at 32-33).

Petitioner has a not insignificant criminal history while on bond. (*Id*. at 3, 5, 24). On October 28, 2024, Petitioner was arrested after three handguns were found in his vehicle. (*Id*.). On December 19, 2025, he was convicted of carrying a loaded handgun, not the registered owner, and sentenced to 364 days in jail. (*Id*.). On March 5, 2025, while on release from the earlier arrest, Petitioner was again arrested again for driving under the influence, felony reckless evading a peace officer, disregard of safety, and obstructing a police officer. (*Id*. at 25-26). On March 2, 2026, Department of Homeland Security ("DHS") arrested Petitioner at the county jail upon his release from state custody. (*Id*. at 2). At the time he filed the Petition, he remained detained at the California City Immigration Processing Center. (*Id*. at 3).

## II.    APPLICABLE LAW AND ANALYSIS

Under 28 U.S.C. § 2241(c)(3), a district court may grant a writ of habeas corpus if the

2

petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." District courts retain jurisdiction under § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of a removal order.  *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)); *see also Jennings v. Rodriguez*, 538 U.S. 281, 294 (2018).

A.  Statutory and Legal Framework

1.  Mandatory Detention under 8 U.S.C. § 1225(b)

Section 1225(a)(1) provides that an alien present in the United States who has not been admitted, or who arrives in the United States, is deemed an "applicant for admission." Applicants for admission must be inspected by immigration officers consistent with U.S. immigration law. *Jennings*, 583 U.S. at 287 (quoting § 1225(a)(3)).  If an immigration officer determines that an arriving alien is inadmissible and the alien does not indicate an intention to apply for asylum or express a fear of persecution, the officer must order the alien removed without further hearing or review.  § 1225(b)(1)(A)(i); 8 U.S.C. § 1182(a)(7).

With limited exceptions, § 1225(b)(2)(A) directs that if am applicant for admission is not "clearly and beyond a doubt" entitled to be admission, "the alien *shall* be detained" for removal proceeding under 1229a.  § 1225(b)(2)(A) (emphasis added).  Applicants for admission may be released on parole only for urgent humanitarian reasons or significant public benefit."  *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A) and citing 8 C.F.R §§ 212.5(b), 235.3 (2017)).

2.  Discretionary Detention under 8 U.S.C. § 1226(a)[2]

Section 1226(a) authorizes the arrest and detention of an alien pending a decision on removal and grants the government broad discretion to continue detention or release the alien on bond or conditional parole.  § 1226(a); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir.

---

[2] Section 1226(c) "carves out a statutory category of aliens who may *not* be released under § 1226(a)," mandating detention for an alien apprehended under § 1226 "who falls into one of several enumerated categories involving criminal offenses."  *Jennings*, 583 U.S. at 289 (emphasis in original).  In January 2025, the Laken Riley Act ("LRA") amended § 1226(c) to add a new category of alien ineligible for release under § 1226(a), including aliens deemed "inadmissible" for being "present in the United States without being admitted or paroled," who have been arrested for, charged with, or convicted of certain crimes.  LRA, Pub. L. No. 119-1 (Jan. 29, 2025); *see* 8 U.S.C. § 1182(a)(6)(A)(i), § 1226(c)(1)(E).

3

2022) (citing 8 C.F.R. § 236.1(c)(8)).  Federal regulations provide that noncitizens detained under § 1226(a) receive bond hearings at the outset of detention, where they must show by a preponderance of the evidence that they are not a danger to the community or a flight risk. *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); Matter *of Guerra*, 24 I.& N. Dec. 37, 40 (B.I.A. 2006); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007).

After discretionary release under § 1226(a), the government may revoke bond or conditional parole and rearrest the noncitizen "at any time," but such rearrest is constrained by constitutional limits and generally requires a change in circumstances.  *M.R.R. v. Chestnut*, 2025 WL 3265446, at *3 (E.D. Cal. Nov. 24, 2025) (internal citations omitted); *Martinez Hernandez v. Andrews*, 2025 WL 2495756, at *10 (E.D. Cal. Aug. 28, 2025) (while allowing rearrest at any time, "this does not mean that DHS may exercise its discretion in a manner that is inconsistent with constitutional requirements.").

### 3. Government's Change in Position

Until 2025, DHS generally applied § 1226(a) and its discretionary release framework to most noncitizens in the United States without valid documentation.  *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *3 (N.D. Cal. Sept. 12, 2025); *see also, e.g., Escobar Salgado v. Mattos*, 2025 WL 3205356, at *3 (D. Nev. Nov. 17, 2025) (citing *Inspection and Expedited Removal of Aliens*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

In July 2025, the DHS and the Department of Justice adopted a new position that § 1225, rather than § 1226, governs detention of all applicants for admission, including aliens present in the United States who have not been admitted, and that such individuals are subject to mandatory detention under § 1225(b) without bond hearings before an immigration judge, treating these aliens in the same manner that "'arriving aliens' have historically been treated."  *See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, American Immigration Lawyers Association (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited January 7, 2026).  In September 2025, the Board of Immigration Appeals issued a precedential decision adopting this interpretation and holding that immigration judges lack authority to grant bond to

4

noncitizens present in the United States without admission, because they are applicants for admission subject to § 1225(b)(2)(A). *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 at *9.

B. Due Process

The Fifth Amendment's Due Process Clause protects "persons" within the United States, including noncitizens, from deprivation of liberty without due process of law. *Trump v. J.G.G.*, 604 U.S. 670 (2025) (citing *Reno v. Flores*, 507 U.S. 292, 305 (1993)*; Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001). The scope of protection varies by immigration status and circumstance. *Zadvydas*, 522 U.S. at 693 ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."). Once noncitizens enter the country, even unlawfully, they are entitled to due process protections, and due process generally requires some form of hearing before the government deprives a person of liberty. *Id*.; *see also Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality. In the latter instance, the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'")*; see also Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

C. Analysis

Petitioner argues that his prolonged detention[3] without a bond hearing violates his procedural due process rights. (Doc. 1 at 16-17). Respondents do not substantively address his due process argument. (Doc. 12). Instead, they acknowledge that court in this district have rejected the government's claim that noncitizens who unlawfully enter the country are subject to mandatory detention under 8 U.S.C. § 1225(b) and argue that if this Court reaches the same conclusion, it must deny release and order a bond hearing. (*Id*. at 2-5).

As a threshold matter, this Court joins the majority of courts in holding that noncitizens previously released on conditional parole and later re-detained are not "applicants for admission" subject to mandatory detention under § 1225(b)(2)(A); rather, their detention continues to be

---

[3] At the time he filed the Petition, Petitioner had been detained less than 30 days.

governed by § 1226(a) during removal proceedings.  *See, e.g., Montero-Alvarez v. Alberran*, 2025 WL 3754116, at *4 (E.D. Cal. Dec. 29, 2025) (collecting cases); *C.A.R.V. v. Wofford*, 2025 WL 3059549, at *8 (E.D. Cal. Nov. 3, 2025); *Barco Mercado v. Francis*, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (collecting cases); *But see, e.g., Alonzo v. Noem*, 2025 WL 3208284, at *5 (E.D. Cal. Nov. 17, 2025); *Ramos v. Lyons*, 2025 WL 3199872 (C.D. Cal. Nov. 12, 2025).

Procedural due process analysis asks (1) whether a protected liberty interest exists and, if so, (2) what process is due.  *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); *Garcia v. Andrews*, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

Respondents do not dispute that Petitioner was apprehended upon entering the country and subsequently released on bond, and then re-detained.  (*See* Doc. 12-1 at 32-33).  ICE initially has discretion under § 1226(a) to detain or release him and could release him if satisfied he posed no danger or flight risk.  *Rodriguez Diaz*, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)).  Release reflects a government determination that the noncitizen is not a danger to the community or flight risk.  *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom*, *Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018); *Espinoza v. Kaiser*, 2025 WL 2675785, at *6 (E.D. Cal. Sept. 18, 2025).  When a noncitizen is released pending a final removal decision and complies with the conditions of release, courts have found a protected liberty interest in remaining out of custody.  *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032-33 (N.D. Cal. 2025) (collecting cases).  Here, Petitioner's release and time in the community created a protected liberty interest in continued release following conditional parole.  *See Solano v. Robbins*, 2025 WL 3718831, at *6 (E.D. Cal. Dec. 23, 2025) (collecting cases); *Pinchi*, 792 F. Supp. 3d at 1033.

To determine what process is due, courts apply the three-factor balancing test outlined in *Mathews v. Eldridge*:[4]  424 U.S. 319, 335 (1976).  First, the Court considers "the private interest

---

[4] The Ninth Circuit has noted that the Supreme Court "when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews*."  *Rodriguez Diaz*, 53 F.4th at 1206-07.  However, in light of the consistent employment of *Mathews* by district courts in the Ninth Circuit in determining whether due process applies in the context of re-detention of previously paroled noncitizens, the Court proceeds to apply those factors while still reserving judgment on whether *Mathews* is an "all embracing test" when encountering due process challenges by immigrant detainees. *See*

6

that will be affected by the official action." *Id*. Petitioner's interest in remaining free from detention is substantial. *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty [the Due Process] Clause protects."); *Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (recognizing it is "beyond dispute" that the "private interest at issue here is 'fundamental'"); *see also Pinchi*, 792 F. Supp. 3d at 1033.   The IJ already found that Petitioner did not pose a danger at that time, that a $25,000 bond mitigated flight risk, and that he should be released. (*See* Doc. 12-1 at 32-33). Thus, Petitioner's private interest therefore is heavily affected, and this factor weighs in his favor.

Second, the Court considers "the risk of an erroneous deprivation" of that interest under the procedures used, and the probable value of additional safeguards. *Mathews*, 424 U.S. at 335. Petitioner received no pre-deprivation custody redetermination hearing, so the risk of erroneous deprivation is high, and the value of a hearing before a neutral decisionmaker is significant. Respondent submitted evidence of Petitioner's criminal history, including convictions for carrying a loaded handgun, not the registered owner, felony reckless evading a police officer, and driving under the influence, as well as arrests for evading a peace officer, disregard of safety, and obstructing a police officer. (*See* Doc. 12-1 at 3, 24-27).  Nonetheless, given the absence of any due process argument by Respondents and the lack of a neutral determination that Petitioner is currently a danger or flight, both the risk of erroneous deprivation and value of additional safeguards weigh slightly in Petitioner's favor. *See A.E.*, 2025 WL 1424382, at *5.

Third, the Court considers the government's interest, including any fiscal or administrative burdens additional procedures would impose. *Mathews*, 424 U.S. at 334. Unquestionably, the government has a substantial interest in enforcing immigration laws. Indeed, it is a sovereign's fundamental right to control its borders, to protect national security, and ensure integrity in its immigration system.  Respondents, however, do not explain how Petitioner specifically threatens those interests or how providing him with a hearing before a

---

*A.E. v. Andrews*, 2025 WL 1424382, at *4 (citing *Dusenbury v. United States*, 534 U.S. 161, 168 (2002) ("we have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims.").

neutral decisionmaker undermines them. Nor do they show that a hearing would impose more than minimal fiscal or administrative burdens. *See J.A.E.M. v. Wofford*, 2025 WL 3013377, at *7 (E.D. Cal. Oct. 27, 2025) (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("In immigration court, custody hearings are routine and impose a 'minimal' cost."). Respondents also failed to provide Petitioner with notice or reasons prior to his re-detention before it occurred. On this record, Respondents have not demonstrated a strong governmental interest in detaining Petitioner without a hearing. *See Noori v. LaRose*, 2025 WL 2800149, at *11 (S.D. Cal. Oct. 1, 2025); *A.E. V. Andrews*, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

Applying the *Mathews* factors, the Court concludes Petitioner's re-detention without hearing violated his procedural due process rights.

### D.  Conclusion and Remedy

The remaining question is the proper remedy: pre-deprivation process or prompt post-deprivation process. Respondents contend the correct remedy is a post-deprivation bond hearing where Petitioner would bear the burden of proof. (Doc. 12 at 2-5).

As previously reasoned by a judge in this district,

> The Supreme Court has held that "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *See Zinermon v. Burch*, 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (emphasis in original). However, the Court also recognized that there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. *Id.* at 128, 110 S.Ct. 975 (noting there may be "special case[s]" where a pre-deprivation hearing is impracticable); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 791 F.Supp.3d 1021, 2025 WL 1983677, at *9 (N.D. Cal. July 17, 2025) ("absent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ"). The rapidly developing caselaw on this subject gives limited guidance as to where this line should be drawn. Some courts that have addressed detention-related habeas petitions brought by persons released with enhanced supervision conditions have required pre-deprivation process, but in somewhat different circumstances. In *E.A.T.-B. v. Wamsley*, No. C25-1192-KKE, 795 F.Supp.3d 1316, 2025 WL 2402130, at *4 (W.D. Wash. Aug. 19, 2025), the district court ordered the release of a petitioner arrested by ICE immediately after appearing in immigration court. That court agreed with the petitioner that ICE's post hoc explanation that violations warranted her detention was pretextual, given that ICE first became aware of

8

petitioner's alleged violations a few hours before her immigration hearing, DHS did not raise those violations at the hearing or argue the petitioner should be detained for any reason, and the petitioner was then provided multiple, inconsistent justifications for her arrest. *Id*. In *Arzate v. Andrews*, No. 1:25-CV-00942-KES-SKO (HC), 2025 WL 2230521, at *7 (E.D. Cal. Aug. 4, 2025), converted to preliminary injunction sub nom, 2025 WL 2411010, at *1 (E.D. Cal. Aug. 20, 2025), the court ordered immediate release of in immigration detainee who had been in compliance with his conditions of release, even though he had incurred a misdemeanor arrest while on parole, in part because no charges were ever filed.

*12 In contrast, this Court ordered a bond hearing in *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767 (E.D. Cal. Aug. 28, 2025), where the petitioner's records indicated numerous violations. Though Martinez Hernandez offered explanations for the violations and there was a dispute of fact as to whether the violations occurred, ICE's reliance upon those violations was "not obviously pretextual." *Id*. at * 12 ("If Respondent's view of the facts is correct, it is at least arguable that providing Petitioner with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated her flight."). As this Court noted in *Martinez Hernandez*:

> In similar circumstances, courts have refused to release the petitioners but have ordered timely bond hearings. Carballo v. Andrews, No. 1:25-CV-00978-KES-EPG (HC), 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025), citing Perera v. Jennings, et. al, No. 21-CV-04136-BLF, 2021 WL 2400981, at *5 (N.D. Cal. June 11, 2021); Pham v. Becerra, No. 23-CV-01288-CRB, 2023 WL 2744397, at *6 (N.D. Cal. Mar. 31, 2023). "[A]llowing a neutral arbiter to review the facts would significantly reduce the risk of erroneous deprivation." Guillermo M. R. v. Kaiser, No. 25-CV-05436-RFL, 791 F.Supp.3d 1021, 2025 WL 1983677, at *8 (N.D. Cal. July 17, 2025). Thus, the Court concludes that prompt, post-deprivation process is required here.

*M.R.R.*, 2025 WL 3265446, at *11-12.

Respondents argue that, as in *Martinez Hernandez*, the circumstances leading to Petitioner's immediate re-detention upon release from state custody were not "obviously pretextual" and, that it is "at least arguable" that pre-deprivation notice and a hearing would have been impracticable and could have motivated flight. (Doc. 12 at 2-3 (citing *Martinez Hernandez*, 2025 WL 2495767, at *12). Respondents distinguish two cases in which the assigned district judge ordered immediate despite criminal records, emphasizing that in *Yon Kervis U. v. Chestnut,* 2026 WL 88983 (E.D. Cal. Jan. 12, 2026), DHS only presented arrests for driving under the influence without evidence of conviction, and in *Guzman v. Andrews*, 2025 WL 2617256, at 7

9

(E.D. Cal. Sept. 9, 2025), DHS waited years between the underlying offense and re-detention, undermining any claim of urgency.  Here, by contrast, DHS immediately detained Petitioner following his release from state custody based on recent convictions for felony reckless evading, carrying a loaded firearm by a non-registered owner, and misdemeanor driving under the influence, asserting that changed circumstances rendered him a danger and a flight risk.  (Doc. 12 at 3–4; *see Yon Kervis U.*, 2026 WL 88983 ("The contention that an arrest, without more, constitutes evidence of criminal activity is without merit."); Guzman, 2025 WL 2617256, at *7) (finding government did not demonstrate "urgent need to detain" petitioner before pre-deprivation bond hearing because he was convicted of a misdemeanor in 2022 and was not detained by ICE until 2025)).

Based on the foregoing, the undersigned concludes that prompt post-deprivation process is the appropriate remedy, rather than immediate release.  *See Carballo v. Andrews*, No. 1:25-cv-00978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025); *Gautam v. Chestnut*, 1:26-cv-02305-KES-HBK, 2026 WL 1030903 (E.D. Cal. Apr. 16, 2026) (ordering bond hearing where petitioner was detained by immigration authorities the day after local law enforcement charged him with possession of a stolen firearm).

Consistent with the numerous decisions in this circuit, at such a hearing, the government must bear the burden to prove Petitioner is a flight risk or danger to the community by clear and convincing evidence.  *Yosseline P.G. v. Noem*, 2026 WL 183732, at *5 (E.D. Cal. Jan. 23, 2026) (collecting cases); *J.E.H.G. v. Chestnut*, 2025 WL 3523108, at *14 (E.D. Cal. Dec. 9, 2025) (reasoning that because the government initially determined the noncitizen was not a danger or flight risk when releasing him, the government should bear the burden to justify re-detention.).

III.    RECOMMENDATIONS

Accordingly, it is hereby RECOMMENDED that:

1.  The petition for writ of habeas corpus (Doc. 1) be GRANTED IN PART as follows:

   a.  Respondents be directed to provide Petitioner with a substantive bond hearing under 8 U.S.C. § 1226(a), at which an Immigration Judge will determine whether Petitioner poses a risk of flight or a danger to the community if

10

released.

      b.  At that hearing, the government SHALL bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or is a flight risk

2.  If Petitioner is released, Respondents be PERMANENTLY ENJOINED AND RESTRAINED from rearresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice of at least seven days' notice before any pre-deprivation hearing, and at the hearing the government shall bear the burden of demonstrating by clear and convincing evidence that he is likely to flee or pose a danger to society if not arrested.

3.  If legally sufficient circumstances justify arrest without advance notice, a post-deprivation hearing consistent with the requirements SHALL be provided within seven days of the arrest. Alternatively, if Petitioner becomes subject to a final order of removal and Petitioner receives notice of that order, Respondent may detain him solely for executing removal but MUST provide a bond hearing within the timeframe required by law.

4.  This case be CLOSED.

NOTICE OF EXPEDITED OBJECTIONS

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Given the recommendation to grant the petition in part, a party may file written objections with the Court within five (5) days of service of these Findings and Recommendations.  *Id*.; Local Rule 304(b) (permitting court to set a different time).  The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed fifteen (15) pages.  The Court will not consider exhibits attached to the Objections.  To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity.  Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when

11

reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).  A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated:     June 17, 2026

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE